IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

JANET MARIA MANN                                                    PLAINTIFF


        v.                              CIVIL NO.        10-3049


MISHAEL J. ASTRUE, Commissioner
of Social Security Administration                                  DEFENDANT

## MEMORANDUM OPINION

Plaintiff brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision

of the Commissioner of Social Security Administration (Commissioner) denying his claim for a

period of disability and disability insurance benefits (DIB) under Title II of the Social Security

Act (Act), 42 U.S.C. § 423(d)(1)(A). In this judicial review, the court must determine whether

there is substantial evidence in the administrative record to support the Commissioner's decision.

*See* 42 U.S.C. § 405(g)*.*


I.      **Procedural Background:**

Plaintiff filed an application for a period of disability and disability insurance benefits on

June 29, 2006, alleging disability beginning January 1, 2001 (Tr. 74). The application was denied

initially and on reconsideration and Plaintiff requested a hearing on January 24, 2007 (Tr. 46, 55,

58). A hearing was held on December 7,  2007, in Harrison, Arkansas before administrative law

judge (ALJ) (Tr. 10-32).  On August 8, 2008, the ALJ issued a decision finding Plaintiff not

disabled (Tr. 35-45). The Appeals Council denied Plaintiff's request for review on March 20,

2010 (Tr. 1).  The Plaintiff filed the current action on May 20, 2010. (ECF No. 1).

Janet Mann was born on April 2, 1950 (T.13,44,74), has an eleventh grade education and has not yet received her GED (T.13, 112,141,150). Her past relevant work includes employment as a manufacturing plant production worker (T.14,15,16,44,91-100,107,148,149). Ms. Mann alleged disability with an onset date of January 1, 2001 due to a left rotator cuff tear, back pain, scoliosis, ulnar nerve damage in the left hand, carpal tunnel syndrome, hip pain, left leg pain, bilateral foot pain, hypertension, sleep apnea, anxiety attacks and depression (T. 13, 74, 106, 119, 125, 126,129, 130, 138).

The ALJ found Plaintiff retained the residual functional capacity (RFC) to perform the full range of light work activity (Tr. 41-44) and that she retained the ability to perform her past relevant work. In the alternative, the ALJ found that in view of Plaintiff's RFC, her age, and educational status, the Medical-Vocational Guidelines also directed a finding that she was not disabled, at step five of the sequential evaluation (Tr. 44-45). See 20 C.F.R. Pt. 404, Subpt. P, Appendix II, Rule 201.11.

## II.   Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id.* "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id.* As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome,

or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If the court finds it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, the court must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683

F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

III.    Discussion:

In this case the ALJ was faced with the unenviable position of trying to determine the Plaintiffs's RFC as of September 2003, which was the date of the expiration of the Plaintiff's insured status.  It is further complicated by the fact that the Plaintiff does not apply for disability benefits until 2006 alleging an on set date of 2001.  The final complicating task for the ALJ is that the Plaintiff does not produce one medical record prior to August 2004.

In order to receive disability insurance benefits, an applicant must establish that she was disabled before the expiration of her insured status. See 42 U.S.C. §§ 416(I), 423(c)*; Stephens v. Shalala,* 46 F.3d 37, 39 (8th Cir.1995) (per curiam) (citing *Battles v. Sullivan*, 902 F.2d 657, 659 (8th Cir.1990)). In this instance the Plaintiff must prove that her disability existed prior to September 2003.

 Evidence of a disability subsequent to the expiration of one's insured status can be relevant, however, in helping to elucidate a medical condition during the time for which benefits might be rewarded. *See Fowler v. Bowen*, 866 F.2d 249, 252 (8th Cir.1989) ( Fowler ); *Martonik v. Heckler,* 773 F.2d 236, 240-41 (8th Cir.1985) ( Martonik ). But see *Milton v. Schweiker*, 669 F.2d 554, 555 n. 1 (8th Cir.1982) (per curiam) (noting that a heart attack subsequent to the expiration of insured status without evidence of a heart condition during the relevant time period cannot serve as a basis for recovering disability benefits)*. Pyland v. Apfel*  149 F.3d 873, 876 -877 (C.A.8 (Ark.),1998)

The Plaintiff alleged disability with an onset date of January 1, 2001 due to a left rotator cuff tear, back pain, scoliosis, ulnar nerve damage in the left hand, carpal tunnel syndrome, hip

pain, left leg pain, bilateral foot pain, hypertension, sleep apnea, anxiety attacks and depression

(T.13,74,106,119,125,126,129,130,138).

The ALJ determined that the Plaintiff had severe impairments of left rotator cuff tear and

scoliosis (20 CFR 404.1520(c)). (T. 40), but that through the date last insured the Plaintiff did

not have an impairment or combination of impairments that met or medically equaled one of the

listed impairments in 20 CFR Part 404, Subpart P, Appendix1(T. 40) and that she had the

residual functional capacity to perform the full range of light work as defined in 20 CFR

404.1567(b).  (T. 41)

 A.  **Impairments subsequent to Expiration of Benefits.**

  **1.  Physical**

The ALJ refused to consider the Plaintiff's complaints related to carpal tunnel syndrome,

hip pain, left leg pain, bilateral foot pain, hypertension, and sleep apnea.  The Plaintiff argued

that the "medical evidence in Ms. Mann's case is both consistent and overwhelming. There are

numerous reports from treating physicians corroborating her subjective complaints. It is clear that

the ALJ in Ms. Mann's case has fragmentized her subjective allegations and did not consider all

of her impairments in combination, thus committing reversible error."  (ECF No. 8, p. 14).

It is well established that the ALJ must consider the impairments in combination and not

fragmentize them in evaluating their effects. *Delrosa v.  Sullivan*, 922 F.2d 480, 484 (8th Cir.

1991) (citing *Johnson v. Secretary of Health & Human Servs*., 872 F.2d 810, 812 (8th Cir. 1989).

The question, of course, is not whether the Plaintiff was disabled at the time of the hearing before

the ALJ but if she was disabled in September 2003.

The Plaintiff reported that she had carpal tunnel surgery at St. Mary's hospital in 1997,

right knee surgery in 1998, and she was in a foot hospital in 1990. (T. 328).  The record does not

contain any information concerning these surgeries nor does the record reflect that the Plaintiff

had any difficulties as a result of these surgeries prior to 2003.

The Plaintiff was substantially gainfully employed in 1990-1993, 1996-1997, 2000, and

2001. (T. 79).  In *Johnson v. Apfel*, 240 F.3d 1145, 1148-49 (8th Cir.2001), the court stated

"[a]cts which are inconsistent with a claimant's assertion of disability reflect negatively upon that

claimant's credibility."   *See Goff v. Barnhart,* 421 F.3d 785, 793 (8th Cir.2005) (holding that

working after the onset of an impairment is some evidence of an ability to work).

There is no evidence that the above listed surgeries were not successful in resolving any

problems the Plaintiff was having at the time and, in any event, there is no evidence of any

follow up treatment for any of the alleged disabling conditions prior to the expiration of insured

status.  In general, the failure to obtain follow-up treatment indicates that a person's condition

may not be disabling or may not be as serious as alleged. *See Shannon v. Chater*, 54 F.3d 484,

487 (8th Cir.1995) (holding "[g]iven his alleged pain, Shannon's failure to seek medical

treatment may be inconsistent with a finding of disability").

There is also no evidence that the Plaintiff required any pain medication during the

relevant time period much less prescription pain medication. Plaintiff's failure to seek

prescription pain medication or to take prescription pain medicines for symptoms during the

relevant period, also weighs against her claim of disability. *Tellez v. Barnhart*, 403 F.3d 953, 957

(8th Cir. 2005); *Masterson v. Barnhart*, 363 F.3d 731, 739 (8th Cir. 2004).

The court also notes that the plaintiff suffered a fall on September 24, 2004 which

precipitated her low back pain (T. 344) and a fall in October 2004 when she injured her right

foot. (T. 297). In April 2005 she was diagnosed with a C5-6 left foraminal disc herniation with

left C6 nerve root compression. (T. 307)

There is apparently no direct evidence of Plaintiff's mental status, sleep apnea,

hypertension, or mental impairments that exists prior to September 30, 2003. In addressing this

fact, the ALJ stated that "[t]he record does not establish the onset of any symptoms related to

those conditions prior to September 30, 2003" (Tr. 43). The absence of medical evidence is a

factor to be considered. *Barrett v. Shalala*, 38 F.3d 1019, 1022 (8th Cir. 1994).

While the ALJ has a duty to develop the record fully and fairly, *Driggins v. Harris*, 657

F.2d 187, 188 (8th Cir.1981), even when a claimant has a lawyer, it is of some relevance to the

court that the Plaintiff's lawyer did not obtain (or, so far as we know, try to obtain) one medical

record concerning the above claimed disabilities during the relevant time period. *Onstad v.*

*Shalala,* 999 F.2d 1232, 1234 (C.A.8 (Minn.),1993), *Offield v. Barnhart*, 2006 WL 533783,

*17+ (N.D.Iowa Mar 02, 2006).  Claimant has the burden of proving her disability by

establishing a physical or mental impairment lasting at least twelve months that prevents her

from engaging in any substantial gainful activity (SGA). *Ingram v. Chater*, 107 F.3d 598, 601

(8th Cir. 1997).  The Plaintiff cannot shift that burden by merely showing subsequent injuries s in

her life that occurred after the expiration of benefits that have no causal connection to a disability

that is alleged to have existed in 2001.

### 2.  Anxiety and Depression:

The ALJ also did not consider the Plaintiff's complaints of anxiety and depression.  It

appears that the Plaintiff first complains of Anxiety when she saw Dr. Thomas O'Hara on June

11, 2005. (T. 323).  She makes another reference to being treated for depression in the past with

Wellbutrin [1]  when she saw Dr Shah on February 21, 2006 (T. 339). Dr. Shah noted that she was "slightly sad and depressed because of trouble with her daughter and her boyfriend and her rotator cuff tear. (Id. ) Dr. Shah prescribed Prozac. (Id.)

It does not appear that the Plaintiff sought formal treatment for depression or anxiety prior to September 2003.  *Id*.; *See Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007) (holding that lack of formal treatment by a psychiatrist, psychologist, or other mental health professional is a significant consideration when evaluating Plaintiff's allegations of disability due to a mental impairment).

It does appear that the Plaintiff sought some initial mental health treatment at Summit Point Behavioral Health Resources on September 6, 2005. (T. 265). She was diagnosed with Depressive Disorder NOS and a GAF of 59[2]  (Id.).  A treatment plan was proposed and the next scheduled visit was December 6, 2005. (T. 266).  There is no evidence that the Plaintiff  pursued any treatment plan after the initial visit.

 In addition to the results of objective medical tests, an ALJ may properly consider the claimant's noncompliance with a treating physician's directions, *Holley v. Massanari*, 253 F.3d 1088, 1092 (8th Cir.2001), including failing to take prescription medications, *Riggins,* 177 F.3d at 693, seek treatment, *Comstock v. Chater*, 91 F.3d 1143, 1146-47 (8th Cir.1996), and quit smoking. *Kisling v. Chater*, 105 F.3d 1255, 1257 (8th Cir.1997). *Choate v. Barnhart*  457 F.3d 865, 872 (C.A.8 (Mo.),2006)

---

[1]There is no evidence when this treatment occurred.

[2]A GAF score of 51 to 60 indicates "moderate symptoms ... OR moderate difficulty in social, occupational, or school functioning." DSM-IV-TR at 34.

It appears that the Plaintiff began to treat at the Eureka Christian Health Outreach between June and October 2007. (T. 347-353). The Plaintiff obtained a Medical Assessment of Ability to Do Work-Related Activities by Dr. Bell on September 27, 2007. (T. 335-338). These records make no reference to the Plaintiff's condition prior to September 2003 and the ALJ properly determined they were not relevant. The court does note that the records show that the Plaintiff was getting better with the Seroquel. (T. 347) Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits. *See, e.g., Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir.2004); *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir.1987); see also *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir.1983) (affirming a denial of benefits and noting that the claimant's impairments were responsive to medication). *Warre v. Commissioner of Social Sec. Admin.* 439 F.3d 1001, 1006 (C.A.9 (Or.),2006). The records from Eureka Christian Health Outreach also show that the Plaintiff was "not currently in counseling" (T. 347). *Id.*; *See Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007) (holding that lack of formal treatment by a psychiatrist, psychologist, or other mental health professional is a significant consideration when evaluating Plaintiff's allegations of disability due to a mental impairment).

### 3. Left rotator cuff tear and ulnar nerve damage

The Plaintiff tore her left rotator cuff on August 26, 2004 as a result of "pulling a soup vat" (T. 157) which weighed approximately 800 pounds (T. 311). Although the ALJ considered this injury it is clear that this incident was almost one year after the Plaintiff 's insured status expired, was completely unrelated to any preexisting condition, and is irrelevant to her claim for disability. The alleged ulnar nerve damage occurred after the rotator cuff surgery and thus

subsequently to the expiration of Plaintiff's insured status. (T. 316)

## B.  Impairments prior to expiration of benefits

The only medical condition existing in the Plaintiff prior the expiration of benefits was

scoliosis. On February 18, 2004 Dr. Yuill performed a lumbar sacral exam of the Plaintiff's spine

and found there was "mild levoscoliosis".  Scoliosis is a sideways curvature of the spine that

occurs most often during the growth spurt just before puberty.  See www.mayoclinic.com

Dr. Yuill noted that the "Vertebral body height is normal.  There is mild L-4-5 dis space loss.

Facet hypertrophy is present on the left at L5-S1" .  His impression was degenerative scoliosis

with mild L4-5 disc disease. (T. 245). The Plaintiff was seen by Dr. Mark Booth on May 4, 2004

and diagnosed with lumbar spinal stenosis (T. 233).  Conservative treatment was prescribed with

therapeutic exercises and a home exercise program (T. 236).  Dr. Booth did note that the Plaintiff

had a tendency to have an anterior pelvic tilt with hips oriented more to the left side during the

walk cycle and had a tendency to side-bend her trunk over to the left during the weight

acceptance phase on the left side (T. 234).

The Plaintiff was seen by Dr. Kirk Lee, a chiropractor, on December 7, 2004 after a fall

which was back pain  (T. 344).  Dr. Kirk noted that the Plaintiff's x-rays showed a "mild rotatory

scoliosis (Id. ).   The term rotatory means that the vertebrae making up this curvature are rotated

so that their spinous processes are pointed towards the concavity.  Dr. Lee recommended a

conservative course of treatment lasting less than 30 days (Id.).  While there are no specific

medical records indicating the presence of this condition it is clear that there is medical evidence

that this physical impairment existed prior to the expiration of the Plaintiff's insured status and

the ALJ so consider it.

**RFC:**

The ALJ found Plaintiff retained the residual functional capacity (RFC) to perform the

full range of light work activity (Tr. 41-44). Light work involves lifting no more than 20 pounds

at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the

weight lifted may be very little, a job is in this category when it requires a good deal of walking

or standing, or when it involves sitting most of the time with some pushing and pulling of arm or

leg controls. To be considered capable of performing a full or wide range of light work, you must

have the ability to do substantially all of these activities. If someone can do light work, we

determine that he or she can also do sedentary work, unless there are additional limiting factors

such as loss of fine dexterity or inability to sit for long periods of time. 20 CFR § 404.1567

RFC is the most a person can do despite that person's limitations. 20 C.F.R. §

404.1545(a)(1). A disability claimant has the burden of establishing his or her RFC. *See*

*Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir.2004). "The ALJ determines a claimant's

RFC based on all relevant evidence in the record, including medical records, observations of

treating physicians and others, and the claimant's own descriptions of his or her limitations."

*Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). This includes medical records,

observations of treating physicians and others, and the claimant's own descriptions of her

limitations. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). Limitations resulting

from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3).

The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual

functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001).

Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical

evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).  "Under this step, the ALJ is required to set forth specifically a claimant's limitations and to determine how those limitations affect her RFC." *Id*.

The only condition that the Plaintiff had prior to the expiration of her benefits was scoliosis. There was no medical evidence showing the condition of the scoliosis as of September 2003.  In February 2004 Dr. Yuill described the condition as "mild" (T. 245).  In December 2004 Dr. Lee described the Plaintiff's condition as "mild rotatory scoliosis". (T. 344).

Although "[e]vidence from outside the insured period can be used in 'helping to elucidate a medical condition during the time for which benefits might be rewarded,' " *Cox v. Barnhart*, 471 F.3d 902 at 907 (quoting *Pyland v. Apfel*, 149 F.3d 873, 877 (8th Cir.1998)), there are no medical records prior to expiration of benefits and what medical evidence there is both doctors subsequent to the time period describe the Plaintiff's condition (scoliosis) as "mild". New evidence is required to pertain to the time period for which benefits are sought and cannot concern subsequent deterioration of a previous condition. *Jones v. Callahan*, 122 F.3d 1148, 1154 (8th Cir.1997). *Moore v. Astrue*  572 F.3d 520, 525 (C.A.8 (Ark.),2009).

A Physical Residual Functional Capacity Assessment was requested by the Commission which was performed by Dr. Jerry Mann on October 31, 2006.  Dr. Mann was of the opinion that there was "insufficient evidence to rate the claim as of the DLI" (T. 269).  Dr. Mann's report was reviewed by Dr. Crow on January 10, 2007 and affirmed (T. 275).

It is also noteworthy that the Plaintiff did return to full time employment in 2004 when she injured her rotator cuff.  The fact that Plaintiff was engaged in full time work until she tore her rotator cuff pulling an 800 pound cart is an indication that her pre-exising scoliosis was

minor in 2004 and did not affect her ability to do light work. *See Goff v. Barnhart,* 421 F.3d 785,

793 (8th Cir.2005) (holding that working after the onset of an impairment is some evidence of an

ability to work). In *Johnson v. Apfel*, 240 F.3d 1145, 1148-49 (8th Cir.2001), the court stated

"[a]cts which are inconsistent with a claimant's assertion of disability reflect negatively upon that

claimant's credibility."   It is clear that Plaintiff's main complaint concerning her inability to

work centers around her rotator cuff injury and the resulting ulna nerve damage both of which

occurred after her date last insured.

**IV.     Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial

evidence supporting the ALJ's decision, and thus the decision should be affirmed.  The

undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice.


Dated  this June 22, 2011.


*/s/ J. Marschewski*
HONORABLE JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE